[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
RLD Limited Partnership ("RLD"), appeals from the decision of the Seymour Inland Wetlands Commission ("Commission"), denying without prejudice its application for approval of a site plan. RLD proposed a subdivision of a parcel of land of approximately eight acres through which Great Hill Brook flows en route to the Housatonic River. In addition to the eight acre parcel, which includes frontage on Buckingham Road, RLD asserted at the court hearing that it has an option to purchase a larger tract of land owned by the family of one of the partners. That tract has frontage on Southwest Road and adjoins the eight-acre tract.
In its application, RLD sought approval to construct a road leading into the eight-acre parcel from Buckingham Road and crossing the brook at three locations in order to provide access to four lots and to the larger tract to which the applicant's option to purchase applies.
After conducting a hearing on August 8, 1990, the Commission denied the application without prejudice "due to incomplete and insufficient information" at a meeting on August 27, 1990. The Court finds that the plaintiff, as applicant, has established aggrievement. The Connecticut Commissioner of Environmental Protection was served but notified the Court that he would not participate in the appeal.
In denying RLD's application, the Commission did not indicate anything beyond the reason set forth above and it did not identify any particular part of the presentation that it found to be incomplete or any factor as to which it deemed CT Page 4581 the information presented to have been insufficient, however at the public hearing the Commissioners questioned whether road access to the two parcels at issue could be achieved by means that reduced the intrusion on wetlands. Specifically, the Commission sought to know whether access to the two rear lots in the eight-acre parcel and to the larger parcel with frontage on Southwest Road could be achieved by an access road commencing at Southwest Road, so that the access road to the front two lots could stop short of crossing the wetlands. RLD specifically notes in its brief, at pages 3-4, its recognition that the Commission was concerned with this alternative.
The application filed by the plaintiff included a proposal to deposit fill totalling approximately 6,800 cubic yards in wetlands in order to construct a road that would cross the brook in three locations, with an impact on approximately 11,800 square feet of land identified as wetlands. The proposal was to add fill up to 18 feet above the grade of the brook. (Doc. 5, Tr. p. 4).
The witnesses presented by RLD, an engineer and a soil scientist, acknowledged that the deposit of fill and the construction of a road over the brook would have an impact on the wetlands but emphasized efforts to minimize that impact through construction techniques for the proposed roadway. (Doc. 5, Tr. p. 2, 13).
RLD took the position at the hearing that an access road originating at Southwest Road was not a feasible alternative because the distance from Southwest Road to the desired back lots on the eight-acre parcel would be approximately 1200 feet. RLD took the position that such a road would not be approved because of a Seymour building regulation limiting dead-end streets to a length of 750 feet. The regulation at issue states, in pertinent part, as follows:
 I. Dead-end and loop streets. Where dead-end streets are designed to be permanent, they should in general, not exceed seven hundred (700) feet in length, and shall terminate in a circular turnabout having a minimum radius of fifty (50) feet.
The town engineer, Mr. MacBrien, testified that the above regulation had not been interpreted by his office as an absolute prohibition of dead-end streets exceeding 750 feet in length and that he "might very well recommend" such a street if it were the best solution environmentally. (Doc. 5, Tr. p. 10). CT Page 4582
RLD presented no proposal as to an access road from Southwest Road and no evidence of administrative denial of any proposal to develop the site in that way.
REVIEW
Pursuant to section 22a-43(a) C.G.S., an appeal from a decision of an inland wetlands commission is subject to the provisions of section 4-183 C.G.S. Section 22a-42(d) C.G.S. provides that in granting, denying, or limiting any permit for a regulated activity such as construction, alteration or deposition of material in a wetland (see section 22a-38(13) C.G.S.), an inland wetlands commission is required to consider the factors set forth in section 22a-41 C.G.S. and must state upon the record the reason for its decision. The factors referred to include, inter alia, (1) the environmental impact of the proposed action and (2) the alternatives to the proposed action. Section 22a-41(1), (2) C.G.S.
Seymour's Inland Wetlands Regulations provide at section 7.8 that if the Commission grants a permit for a Class B application, such as is at issue in this case, it must support its decision by a written statement attesting, inter alia, that "no preferable location on the subject parcel or elsewhere can reasonably be required and that no further modification of the proposed activity can reasonably be required to further reduce any adverse environmental impact."
Where an agency fails to give reasons for its actions, the courts must search the record to determine if there are valid reasons supported by substantial evidence that will reasonably support the agency's decision. Gagnon v. Inland Wetlands and Watercourses Agency, 213 Conn. 604, 609-611
(1990); Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 541 (1987). Where, as here, a commission has stated a reason for denial but has not stated in detail the respects in which it has found the evidence insufficient, it is similarly appropriate for the court to search the record. Upon doing so, the Court finds that the Commission was unable, on the basis of the presentation offered by RLD, to determine whether it was feasible to provide road access to the property by alternative means, including alternative means with less impact on the wetlands in the area at issue. Both of the witnesses presented by RLD assumed that access to the lots would be from Buckingham Road and offered no comparison with a road approach from Southwest Road.
RLD argues that such an access road could not have been CT Page 4583 considered an alternative within the scope of the regulations because it would be costly and because a road into the tract from Southwest Road would be prohibited by Regulation I, set forth above. Cost alone does not preclude an alternative. See Manchester Environmental Coalition v. Stockton, 184 Conn. 51,62-63 (1981) (construing similar language in the Environmental Protection Act, section 22a-14-20 C.G.S.). The cited road regulation was not shown to be an absolute prohibition nor did RLD show that a plan for such a road had been rejected upon proper application.
As RLD correctly observes, the Connecticut Supreme Court has stated that an applicant need not submit formal plans or drawings as to all possible alternatives to the plan it espouses. Red Hill Coalition, Inc. v. Conservation Commission, 212 Conn. 710, 726 (1989). The Court did not, however, suggest in any way that a commission should ignore or fail to consider an alterative as required by law if the applicant chooses not to provide information concerning that alternative.
One of the reasons asserted by RLD for the road it proposes in its application is provision of access to the rear parcel of land behind the eight-acre parcel (Doc. 5, Tr. p. 8-9), however neither the record nor the site plans introduced at the hearing as to the appeal (Ex. A) provide any information at all concerning the alternative of an access road from that parcel.
Because the Commission had a statutory duty pursuant to section 22a-41 C.G.S. to consider alternatives to the proposed action which would reduce or eliminate impact on wetlands, it acted well within its statutory discretion in denying an application that did not provide enough information to permit it to make the required scrutiny of alternatives. If the Commissioner were to grant the application, its own regulations, at section 7.8, would have required it to attest to the absence of a preferable location for the access road, and it was clearly unable to do so because of the limited information presented by the applicant. Its denial of the application without prejudice was not an arbitrary action, as RLD alleges.
Contrary to RLD's assertions, the Commission did not rely improperly on its own knowledge and experience in matters requiring expertise, the issue in Feinson v. Conservation Commission, 180 Conn. 421, 428-29 (1980). At most, the Commission examined the site as a whole and raised, as it was required by law to do, the issue of alternatives that would avoid or diminish impact on wetlands. It then CT Page 4584 found that the information presented was insufficient to allow the Commission to make that determination responsibly.
RLD further asserts that the Commission failed to balance its right to make productive use of its property against its concern for preservation of wetlands and watercourses. Scrutiny of the record reveals, rather, that the Commission in good faith simply was unable to reach the point of making such a balance because it was unable to complete a proper review of alternatives to the proposed incursion on wetlands.
In its complaint, RLD raised several grounds not pursued in its brief or at the court hearing. Those claims are therefore treated as abandoned. First Hartford Realty Corporation v. Plan Zoning Commission, 165 Conn. 533, 535
(1973); Shaw v. Planning Commission, 5 Conn. App. 520, 525
(1985).
RLD has failed to establish any ground for setting aside the action of the Commission and the appeal is therefore dismissed.
BEVERLY J. HODGSON, JUDGE OF THE SUPERIOR COURT