[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON LEVY DRONEY AND VITALE'S MOTION FOR SUMMARY JUDGMENT #13
In their motion for summary judgment #13, Levy Droney and Joseph A. Vitale claim that they are entitled to judgment against the plaintiffs Rick Dudrow, Robert Bachrach, Sylvia Rosh, Tatiana Pollock, Thomas Morley, Eugene Cederbaum, executor, and Dora Massoff on counts alleging agency liability (Counts 15-24, aiding and abetting violations of Conn. Gen. Stats. §§ 17b-520-535, 87-95, aiding and abetting tortious misrepresentation; 97-101, aiding and abetting breach of fiduciary duty; 104-112, aiding and abetting negligent misrepresentation) and derivative liability (Counts 38-45, misrepresentation; 47-51, breach of fiduciary duty; 53-57, breach of third party beneficiary contract; 59-63, negligence; 67-84, negligent misrepresentation; 120-124, violations of CUTPA, Conn. Gen. Stats. 42-110a, et seq.) The movants argue that these claims are barred either by the doctrine of res judicata or by the doctrine of accord and satisfaction. With regard to res judicata, they claim that because the plaintiffs failed to raise claims related to the facts of this case in East Hill Woods' bankruptcy proceeding. Alternatively, the movants claim that the plaintiffs' voluntary approval of the bankruptcy reorganization acts as an accord and satisfaction and bars them from bringing their current claims against Levy 
Droney and Vitale. The motion for summary judgment #13 is denied for the reasons set forth below.
Standard of Review
"Summary judgment shall rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 384 (now Practice Book § 17-49). Rivera v. Double ATransportation, Inc., 248 Conn. 21, 24 (1999); Peerless Ins. Co.v. Gonzalez, 241 Conn. 476, 481, 697 A.2d 71 (1997). (Internal quotation marks omitted.) Nichols v. Lighthouse Restaurant, Inc.,246 Conn. 156, 163, 716 A.2d 71 (1998)." Alvarez v. New HavenRegister, Inc., 249 Conn. 709, 714 (1999) CT Page 12874
The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Rivera v. Double ATransportation, Inc., supra, 248 Conn. 24.
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Connell v. Colwell,214 Conn. 242, 246-47 (1990). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 380 (1969); Vuono v. Eldred,155 Conn. 704, 705 (1967).
In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski,206 Conn. 495, 500 (1998); Telesco v. Telesco, 187 Conn. 715, 718
(1982).
Res Judicata
"Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action between the same parties or those in privity with them, upon the same claim." Mazziotti v. Allstate Inc. Co., 240 Conn. 799, 812
(1997). Connecticut courts use the transactional test set forth in the Restatement (Second) Judgments to determine whether a claim is precluded under the doctrine of res judicata. "Section 24 of the Restatement provides that the claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . . In determining the nature of a cause of action for these purposes, we have long looked to the group of facts which is claimed to have brought about an unlawful injury to the plaintiff . . . and have noted that even though a single group of facts may give rise to rights for several kinds of CT Page 12875 relief, it is still a single cause of action." (Citations and internal quotation marks omitted.) Vakalis v. Kagan,18 Conn. App. 363, 366 (1989).
The movants contend that (a) the plaintiffs should have raised their current claims against East Hill Woods in the bankruptcy proceeding; (b) the same group of facts "form the basis for both the plaintiffs' claims in bankruptcy and the claims in this Action;" and (c) they are in privity with East Hill Woods based on the complaint which alleges they are agents of East Hill Woods. According to the movants, because they are in privity with East Hill Woods and the claims at issue in the present case were not raised in East Hill Woods' bankruptcy proceeding, the movants may step in to East Hill Wood's shoes and assert a defense of res judicata. The court disagrees.
An order of confirmation in bankruptcy is treated as a final judgment for purposes of res judicata. In re Varat Enterprises,Inc., 81 F.3d 1310, 1315 (4th Cir. 1996). The final judgment in East Hill Woods' bankruptcy proceeding, however, did not, however, discharge the claims against Levy Droney and Vitale. The discharge of claims against a debtor "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."11 U.S.C. § 524(a)(2).
In the bankruptcy proceeding involved in the present case the debtor was East Hill Woods, not the movants. Neither the plan nor the confirmation order attempted to discharge the movants' liability for the claims raised by the seven plaintiffs. In fact, the "Second Amended Plan of Reorganization as Finally Modified," i.e., the bankruptcy reorganization confirmed on December 9, 1997, by the bankruptcy court, specifically preserves the claims against Levy Droney and Vitale. In the plan, "Excluded Persons" is a term defined in Article I of the plan as "each of CRSA and its Affiliates and Insiders, RCAI and its Affiliates and Insiders, Ernst Young . . . its Affiliates and Insiders, Levy 
Droney . . . and its Affiliates and Insiders, and Joseph A. Vitale, together with any insurer for any of the foregoing." Section 9.6 of the Plan provides in pertinent part:
 Preservation of Certain Retained Claims. Except as provided in Section 9.4 and notwithstanding the generality of Section CT Page 12876 9.5, all Claims, rights, causes of action and liabilities of any nature or description which any Persons, including without limitation any residents or former Residents of the Project (or their respective heirs, executors, administrators or personal representatives) have or may have against any Excluded Persons are not released and discharged and are hereby preserved (the "Retained Claims") . . .
Section 9.5 addresses the discharge of claims but states that the claims of the "Excluded Persons" are excepted. The relevant provision of § 9.4 further emphasizes the exclusion of claims against Levy Droney and Vitale from bankruptcy discharge:
 Exoneration. The provisions of this paragraph shall not exonerate any of the Excluded Persons from any claim, action, suit, demand, obligation, or liability to or by any Person with respect to any action, event, forbearance, omission, decision or other cause, matter or thing that occurred before May 20, 1996 or any damages, expenses, costs, or losses arising from or related to any action, event, forebearance, omission, decision or other cause, matter or thing that occurred before May 20, 1996, whether such damages, expenses, costs or losses arose or occurred before or after May 20, 1996.
The order of confirmation of the court at pages 2-3 adopts these provisions specifically:
 "The exoneration provisions, releases, discharges and injunctions set forth in the Plan, including without limitation, the exoneration provisions, releases, discharges and injunctions set fort in Sections 9.4 through 9.7 of Article IX ("the Release") are an important part of the Plan, are integral to a final resolution of claims, are necessary to give finality to the Plan, and form an essential element of the Debtor's ultimate reorganization."
The provisions of the confirmation order are significant, regardless of the movants' arguments concerning the relevance of the intent of the parties, because "[r]es judicata does not bar relitigation of a claim which the prior decision specifically reserves for later determination." New Haven v. Board of LaborRelations, 9 Conn. App. 546, 547 (1987). The terms of the bankruptcy order reserves those claims. CT Page 12877
The bankruptcy code, moreover, expressly negates the movants' claim of discharge of claims against a third party debtor. "Except as provided in subsection (a)(3) [which is not applicable here], discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." (Emphasis added.) 11 U.S.C. § 524. "Section 524 does not . . . provide for the release of thirdparties from liability. . . . This court has repeatedly held, without exception, that § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors." In reLowenschuss, 67 F.3d 1394, 1401 (9th Cir. 1995), cert. denied,116 S.C. 2497 (1996); see Green v. Welsh, 956 F.2d 30 (2d Cir. 1992). Finding that such a release was contrary to § 524(e), the Circuit Court in Lowenschuss vacated the portion of the Bankruptcy Court's confirmation order that released claims against non-debtors. The Lowenschuss court places the strict rule of 11 U.S.C. § 524(e) in context:
 A recent amendment to the Bankruptcy code buttresses our conclusion that § 524(e) does not permit bankruptcy court to release claims against nondebtors. The Bankruptcy Reform Act of 1994 added § 524(g) to the Code. That section provides that in asbestos cases, if a series of limited conditions are met, an injunction issued in connection with a reorganization plan may preclude litigation against third parties. The numerous requirements of § 524(g) make it clear that this subsection constitutes a narrow rule specifically designed to apply in asbestos cases only, where there is a trust mechanism and the debtor can prove, among other things, that it is likely to be subject to future asbestos claims. See 11 U.S.C. § 524(g)(2)(B).
In re Lowenschuss, supra, 637 F.3d 1402 n. 6. See also, In reSalem Suede, Inc., 219 B.R. 922, 934-37 (D. Mass. 1998).
As to the movants' claim that they stand in the shoes of East Hill Woods, the courts relying on § 524(e) have recognized that those entities vicariously or derivatively liable remain so despite the discharge of the wrongdoer; and indeed have exercised their equitable powers to allow a discharged debtor to be sued nominally to establish his liability for purposes of allowing recovery from third parties such as insurers or employers. SeeHawxhurst v. Pettibone Corporation, 40 F.3d 175 (7th Cir. 1994);In re Catania, 94 B.R. 250 (D.Mass. 1989) (where debtor was negligent van driver "the discharge of the Debtor's liability to CT Page 12878 [the plaintiff] did not discharge or otherwise affect the liability of any other entity — whether it be the Debtor's insurer, his employer, his employer's insurer, a joint tortfeasor, or any other party."); In the Matter of Gerald P.McGraw, 18 B.R. 140 (W.D. Wisc. 1982) (where court modified the bankruptcy stay to allow the plaintiff to establish the liability of the bankrupt defendant for purposes of recovering from his employer).
The movants' reliance upon In re Varat Enterprises, Inc.,
supra, 81 F.3d 1310, is not persuasive. That case involved a creditor who objected to another creditor's claim included in a confirmed, and therefore final, bankruptcy plan. Res judicata was invoked by the party whose claim was challenged. The objecting creditor had been present at the confirmation hearing where the issues relating to the subsequent objection were addressed. Finding that the relevant claims regarding the discharge of debts and disbursement of assets under the bankruptcy had been finally adjudicated, the court determined that the objecting creditor's claim was barred by res judicata. Id. The present case from In reVarat, supra, differs because the claims against the movants here were not specifically excluded in the bankruptcy.
The movants assert that Judge Dorsey's decision in AssociatedConstruction Co. v. Camp Dreser McKee, Inc., 646 F. Sup. 1574
(D. Conn. 1996), makes clear that where identical claims could have been asserted against the principal in a prior final judgment, res judicata bars further action on those claims against the agent. Associated Construction did not arise in the context of bankruptcy and the provisions of 11 U.S.C. § 524. No express reservation of claims against the agent was made in the arbitration proceedings that were the basis for the judgment. The movants' argument fails because the claims in the bankruptcy action and the present one are not the same.
Whether the issues in the present case involve vicarious and derivative liability for East Hill Woods' actions is of no moment given the strictures of the bankruptcy code at § 524(e) and the language of the confirmation specifically adopted in the bankruptcy court's order.
Accord and Satisfaction
The movants' second argument is that the plaintiffs' claims are barred by the doctrine of accord and satisfaction because the CT Page 12879 plaintiffs consented to the bankruptcy plan which released East Hill Woods from all claims. Again, the movants contend that they are agents of East Hill Woods and can assert its defenses.
"[A]n accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty." Restatement (Second) of Contracts § 281 (1981). The elements of accord and satisfaction are "(a) an agreement to settle a disputed claim; and (b) fulfillment of the agreement's terms." Associated Construction Co., supra, 646 F. Sup. 1580;W.H. McCune, Inc. v. Isadore Revzon, 151 Conn. 107, 109 (1963).
"Without a mutual assent, or a `meeting of the minds,' there cannot be a valid accord. Crucible Steel Co. v. Premier MFG. Co.,94 Conn. 652, 656 (1920)." Newman Partners v. CFS Construction,Ltd., 236 Conn. 750, 764 (1996). Both the order confirming the bankruptcy plan/agreement, and 11 U.S.C. § 524(e) negate any inference of agreement by the plaintiffs to resolve any claim against the movants at the time of the bankruptcy of East Hill Woods. The order confirming the plan specifically preserves the claims against the movants. There is no evidence that the parties agreed to settle the claims against the movants or that a meeting of the minds among the plaintiffs and movants occurred in the bankruptcy proceeding or thereafter for purposes of resolving the present claims. The first condition required for accord and satisfaction is not met.
Conclusion
For the foregoing reasons Motion for Summary Judgment #13 is denied.
Beverly J. Hodgson Judge of the Superior Court